R. F. CLARKE, Trustee of the Estate of Eunice T. Barnett, Bankrupt, Appellant, v. E. SHERMAN, EUNICE T. BARNETT, and R. F. CLARKE, Trustee of the Estate of John T. Barnett, Bankrupt.

**Bankruptcy:** PREFERENCES: INVESTMENT OF NON-EXEMPT PROPERTY IN HOMESTEAD. After a husband's insolvency, his wife, holding his note, procured a third person to pay a mortgage on the family homestead, taking an assignment thereof and also an assignment of the note against the husband as security, which it was agreed should be filed as a claim against his estate. Within four months the wife became an involuntary bankrupt. Held, that the assignee acquired the note in good faith and for a present, fair consideration and was entitled to be reimbursed out of the husband's estate to the extent of the amount so advanced by him, but that the transaction in excess of the assignee's interest was in fraud of the wife's creditors and her trustee in bankruptcy was entitled to an assignment of the note and mortgage upon payment of the assignee's interest.

*Appeal from Buchanan District Court.*— HON. A. S. BLAIR, Judge.

WEDNESDAY, JUNE 14, 1905.

SUIT in equity to recover personal property, alleged to belong to the bankrupt estate of Eunice T. Barnett. From a judgment granting the plaintiff only a part of the relief asked, he appeals.—*Modified* and *affirmed.*

*Cook & Leach,* and *Roy A. Cook,* for appellant.

*E. E. Hasner,* for appellees.

SHERWIN, C. J.— John Barnett and Eunice T. Barnett are husband and wife. John Barnett was adjudged a bankrupt on the 2d day of September, 1903, at which time

Eunice T. Barnett held his note for $2,000 and interest, aggregating about $3,400. John Barnett owned a homestead worth from $2,000 to $2,500, on which there was a mortgage of about $1,000 for a part of the purchase price thereof. Mrs. Barnett was a surety on a part of her husband's indebtedness, and owned no property beside the note in question. After her husband had been adjudged a bankrupt, Mrs. Barnett became afraid that the homestead might be lost because of his inability to pay the mortgage thereon, and for the purpose of paying the mortgage she made an arrangement with the defendant E. Sherman, whereby he paid the then holder of the mortgage the amount due thereon, and took a written assignment of the note, and also an assignment of the mortgage on the homestead. The assignment of the note recited that Mr. Sherman had paid the mortgage, and taken an assignment thereof; that he had also loaned Mrs. Barnett $50; and that he was to present said note as a claim against the estate of John Barnett, and to receive all dividends therefrom on said claim, and to apply them on the amount paid for the mortgage, and the $50 loaned to Mrs. Barnett. Within four months from the date of this transaction Mrs. Barnett was adjudged an involuntary bankrupt, and later this suit was commenced by her trustee to recover the dividends due and to become due on the note assigned to the defendant Sherman; he alleging that the note was transferred to Sherman with intent and purpose on the part of Mrs. Barnett to hinder, delay, and defraud her creditors, and, further, that the transfer was not made for a present, fair consideration, and that it was in fraud of the bankruptcy laws of the United States. The trial court held that the assignment was made for the purpose of securing to E. Sherman the sum of $50 loaned to Mrs. Barnett, and the further sum of $1,024.89 advanced by him to Mrs. Barnett for the purpose of paying the mortgage on the homestead, and that Mr. Sherman was entitled to receive said sums from the trustee of the estate of John Barnett. The estate of John

Barnett paid more than the aggregate of these sums, and the balance was decreed to be the property of the estate of Eunice T. Barnett.

Two questions are presented for determination — one a question of law, and the other a question of fact. The provision of the bankruptcy act under which it is claimed that the assignment or transfer of the note was void is section 67e (Act July 1, 1898, chapter 541, 30 Stat. 564 [U. S. Comp. St. 1901, page 3449]), which is as follows, so far as material here:

That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. . . For the purpose of such recovery, any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.

By section 6a of the same act (30 Stat. 548 [U. S. Comp. St. 1901, page 3424]), it is provided also that " this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

The appellee contends that the transaction with Mr.

Sherman was in effect the payment of a mortgage on the homestead, and that Mrs. Barnett might legally use the proceeds of nonexempt property for the purpose of providing a homestead for herself or for the purpose of protecting an already existing one. In our view of the case, it is unnecessary to determine whether the transaction can be treated as an application of the property before the trustee's right thereto accrued, for we are of the opinion that an insolvent debtor cannot use nonexempt property for the purchase of a homestead, nor can he use such property for the payment of a mortgage given for a part of the purchase price thereof. Section 2972 of the Code provides that the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary; and it is probably true that under this statute, and the policy of the law as announced by this court, it would make no difference whether nonexempt property used for the purchase of a homestead, or for the payment of an incumbrance thereon, was the property of the husband or wife, if they were both a part of the family, and it could be used by the owner for such purpose. See, on this point, *Adams v. Beale,* 19 Iowa, 61; *Chase v. Abbott,* 20 Iowa, 157; *McClure v. Braniff,* 75 Iowa, 43; *Sayers v. Childers,* 112 Iowa, 679. But under section 2976 of the Code the homestead may be sold on execution for debts contracted prior to its acquisition, if the debtor has no other property liable to execution; and, with this limitation on the homestead right, it is manifest that an insolvent debtor cannot use nonexempt assets for the purchase of a homestead, for by so doing he could defeat the express provision of the statute making the homestead liable for antecedent debts. The creditor who has sold to the bankrupt debtor, relying on the statutory homestead exemption, would be grossly defrauded if on the eve of bankruptcy the debtor could convert his nonexempt property into a homestead which the trustee could not reach. *Wells & Co.*

*v. Anderson*, 97 Iowa, 201, does not sustain the appellees' claim, because of the difference in the facts; and many of the other cases cited in support thereof were controlled by constitutional or statutory exemptions wherein the homestead was exempt from all debts, no matter when contracted. See *First National Bank v. Glass*, 97 Fed. 706 (25 C. C. A. 151); *Jacoby v. Distilling Co.*, 41 Minn. 227 (43 N. W. 52); *O'Donnell v. Segar*, 25 Mich. 367; *North v. Shearn*, 15 Tex. 174; *Cipperly v. Rhodes*, 53 Ill. 346.

Section 67e of the bankruptcy statute provides that the assignment or transfer of property by a bankrupt within four months prior to the filing of the petition, with intent and purpose on his part to hinder, delay, or defraud his creditors, . . . shall be null and void, . . . . except as to purchasers in good faith, and for a present, fair consideration. In her effort to protect the family homestead, Mrs. Barnett may not have had a specific intent to defraud her creditors, but, as she had no legal right to pledge or sell the note for that purpose, it amounted to a legal fraud, and did in fact hinder and delay her creditors to that extent; and for the purposes of this case it may be conceded that the transfer was void so far as her purpose and intent are involved. But her fraudulent intent and purpose, if it existed, is of no avail against a purchaser in good faith, and for a present, fair consideration. It must be borne in mind that Mr. Sherman was not a creditor to whom a preference was being given. He took up the homestead mortgage, and in fact loaned Mrs. Barnett the money necessary for that purpose. While he knew that John Barnett was a bankrupt, he knew nothing about the financial affairs of Mrs. Barnett, further than that she wanted to pay off the homestead mortgage from the dividends paid on the note against her husband's estate; and there is no evidence in the record that he was not acting in the utmost good faith all through the transaction. It is true that he insisted that the money so advanced by him should be repaid, and that he held both the note and the mortgage as

security therefor. Such requirement was not unreasonable, however, nor a badge of fraud or bad faith. No one knew the amount that would be paid on the note by the John Barnett estate. The best estimate or guess that could be then made was that it might perhaps pay 30 per cent., which sum, if paid at that time, would just about pay the amount then due on the mortgage. If the dividends were delayed, interest would accumulate; and, if the estate fell below the estimate, he would be without full security for his loan or advancement. It was therefore natural that he should want the mortgage itself for further security. It is conceded by both sides that the transaction amounted to a mortgage or pledge of the note as security for the amount advanced by Mr. Sherman, and we fail to see wherein there was not a present, fair consideration, under all the facts, even if the transfer were to be treated as an absolute sale. He actually advanced nearly $1,100 on property estimated to be worth less than that sum, and we think that it was a present, fair consideration, within the meaning of the bankruptcy act. The plaintiff offered to reimburse Mr. Sherman upon the assignment to him of the mortgage in question, and now insists that he has the right so to do, and to have an assignment of the mortgage by order of this court. Mr. Sherman took an assignment of the mortgage, and it was not, in fact, paid off. It does not represent a loan made on the homestead after purchase, but a part of the purchase price that has never been paid, and it is still held by Mr. Sherman as secondary security for his loan to Mrs. Barnett. As we have heretofore said, she had no legal right to use nonexempt property for purchasing a homestead; and the order of the trial court canceling the mortgage permitted her to do indirectly that which she could not do directly, and we think it wrong for that reason. The judgment is therefore modified, and Mr. Sherman is directed to assign the said mortgage to R. F. Clarke, trustee, upon payment to him of the amount due to

him under the judgment of the trial court.—*Modified* and
*affirmed.*

WEAVER, J. (dissenting).   In my opinion, the judg-
ment appealed from should be affirmed without modification.

McCLAIN, J., concurs in the dissent.