Gilmore, J.
 

 The only question that will be considered in this cause is this: Where all the members of an insolvent firm join in the demand, are they entitled to the statutory exemptions out of partnership property after it has been seized in execution by partnership creditors? We think not. The section of the statute under which the question arises is as follows: “ Sec. 31 That it shall be lawful for any resident of Ohio, being the head of a family and not the owner of a homestead, to hold exempt from levy and sale as aforesaid, personal property to be selected by such person, his agent or attorney, at any time before sale, not exceeding five hundred dollars in value, in addition to the amount of chattel property now by law exempted. The value of said property to be estimated and appraised by two disinterested householders of the county, to be selected by the officer, etc.,” 66 Ohio L. 50.
 

 The decisions of the" courts of other states upon this question, under kindred statutes, are calculated rather to embarrass' than satisfactorily aid us in the construction of our own statute.
 

 The confused state of the law on this subject will appear from a reference to the cases mentioned below, of which the effect only is given by way of illustration.
 
 Stewart v. Brown,
 
 37 N. Y. 350, answers the question affirmatively.
 

 
 *321
 

 Bonsall et al.
 
 v.
 
 Comly,
 
 44 Penn. 442, answers it in the negative; while
 
 Burns
 
 v.
 
 Harris,
 
 67 N. C., decides that, if all the partners consent, the exemption must be allowed to each of the partners ; but if such consent is not given, then it must be denied to all. There is direct conflict between the New York and Pennsylvania decisions; one or the other is right and must be followed. But we think the principles laid down by the North Carolina decision wholly untenable. The statute confers a positive right, that, in a proper case, can be asserted against the world, and this is a dignity that inheres in all positive legal rights. In North Carolina, the right is so dwarfed that, in the case of partners, its exercise becomes a mere privilege, depending upon the mutual consent of the partners. It would be competent for the legislature to declare a right and prescribe the conditions upon which its exercise should depend; but where the statute creates and declares an absolute right, such right can not be qualified, abridged, or extended by judicial interpretation. If, therefore, on a fair construction of the statute, insolvent partners, individually or collectively, are entitled to the statutory exemptions out of partnership property as against partnership creditors, let the right be granted and enforced by the courts ; if not, let it be denied; and if the law is defective in this respect, let the defect be cured by proper legislation.
 

 Looking alone to the language of the section above quoted, we find nothing to justify the inference that the legislature in passing it was intending to provide for other-than individual debtors, and for the exemption of their individual property from sale on execution ; and when construed in connection with the law relating to partnerships,, as it had always stood and still stands, we are convinced that it could not have been the intention of the law-maker to bring partners or partnership property within the operation or provisions of the section in any respect.
 

 Dealing with the statutory right, and excluding equitable considerations which have no place here, our convic
 
 *322
 
 tions are based upon tbe fact that the right of exemption and the mode of exercising it prescribed by the statute, are wholly inapplicable to partnership property or the rights of the partners therein, and inconsistent with the rights of their creditors in relation thereto. The statute when applied does not affect the ownership of property in any way; it neither confers, takes away, mor changes the debtor’s title by partitioning into severalty that in which there was a joint ownership or otherwise; but when properly invoked, it simply exempts the designated property from execution and leaves the ownership as it was. The language of the section points unmistakably to property owned individually. The selection of the exempted property is to be made by the execution debtor, and the property selected i's to be appraised and set off to the debtor. “ Partners are joint tenants in their stock in trade, . . . and no partner has an exclusive right to any part of the joint stock.” 3 Kent, 37. , Conceding that the interest of a partner in the partnership property may be seized in execution for his individual debt: Suppose a firm consisting of three or more members, and such a seizure in execution of the interest of one of them in the firm property, and suppose .such debtor partner to be demanding the statutory exemption, we can not see how he could select or the householders appraise and set off partnership property to him if the other partners
 
 objected;
 
 and even if the other partners were consenting, it is plain that it could only be done by first assigning certain of the goods to him in severalty, which would be obtaining his exemption by contract with the other partners, and not by virtue of the statutory right. But suppose a levy of execution on the firm property for a firm debt, and a demand for the statutory exemption made by one or two of the partners, and the others objecting to the exemptions being made, there would exist no right of selection by the demanding partners, and no power to set off by the officer,, and hence there could be no exemption under these circumstances. The simple machinery
 
 *323
 
 •of the statute is inapplicable and inadequate to the solulution of such complications.
 

 The right to the exemption, therefore, manifestly depends upon the power of selection, and this power must relate either to property of which the execution debtor is the absolute owner, or to property of which he has the possession and actual control as against the officer holding the execution.
 

 But the court below held that where all .the partners demanded the exemption, they were thereby all consenting to the exemption, and it should therefore be allowed. The •difficulties above suggested as to a single partner, or as to some demanding and others objecting to the exemption, arise and are equally potential here. The statute gives no countenance to the idea that there is to be a joint ownership in the property after it is exempted and set off; nor, as has been said, does it contemplate a partitioning into severalty of that which is joint property, in order to get at the property that may be exempted; and in order to get at the joint property to be exempted, where all were demanding it, the consent of all the partners would have to be given to each selection made by any one of them before it could be exempted and set off. In short, where all were demanding it, the exemptions could only be made with the mutual agreement and consent of all the partners as to the selection of the joint property to be exempted. The right to make such consents and agreements would imply either an actual ownership of the property by the partners, or a possession coupled with an absolute power of disposition.
 

 In this ease, inasmuch as the partnership property had been seized in execution for a firm debt before the demands for exemptions were made, the legal effect of this seizure upon the property must be considered in order to ascertain whether a right of selection and exemption by consent of the partners remained after the seizure.
 

 The law of partnership constitutes a system by itself, which is inapplicable to any other legal relation.
 

 In speaking “ of the origin and purpose of partnership,”
 
 *324
 
 Mi’. Parsons says: “ If partnership offers advantages, it also-exposes those who enter into it to peculiar liabilities. The safety of society requires this. If every partner were not held absolutely for the whole amount of the debts of the firm hy whichsoever of the partners they were contracted, a wide door would be opened for fraud and public loss. It is, however, a very common thing for persons to try, in a vast variety of ways, to gain all the advantages and profits of partnership without encountering these liabilities; or to escape from these liabilities when loss has accrued. This the law forbids, and, as far as it can, prevents ; and it must therefore be always ready to meet the contrivance, evasions and disguises resorted to by ingenious men.” Parsons on Partnership, 4. One of the familiar rules in partnership is that the partnership property and assets are primarily liable for the payment of partnership debts; and no private creditor of a partner can take by his execution any thing more than that partner’s share in whatever surplus remains after the partnership effects have paid the partnership debts.
 

 The rule in equity on this point is thus admirably stated' by Mr. Justice Story: “ Joint property is deemed a trust fund primarily to be applied to the discharge of partnership debts, against all persons not having a higher equity. A long series of authorities has established this equity of the joint creditors, to be worked out through the medium of the partners, that is to say, the partners have a right,
 
 inter sese,
 
 to have the partnership property first applied to the discharge of the partnership debts, and no partner has any right except to his own share of the residue, and the joint creditors are in case of insolvency substituted in equity to the rights of the partners as being the ultimate
 
 eestuis que trust
 
 of the fund to the extent of the joint debts.” Story’s Eq. Juris. Sec. 1253.
 

 In the fact that, in connection with this peculiar system, public policy and the prevention of great losses to society requires each partner, to be held absolutely for the whole amount of the firm debts, and equity as to the partnership
 
 *325
 
 property, regards the partners as trustees holding it for the benefit of their creditors, we find a further reason for presuming that the exemption laws were not intended to apply to or affect partnership property; and we feel warranted in holding that the levy of the execution in this case was an absolute appropriation in law of the property levied on to the payment of a partnership debt, and that these partners, being insolvent, had no remaining interest either legal or equitable in the property. .They could not, therefore, after the levy, acquire a right of exemption in the property by mutual agreement or otherwise, without the consent of the firm creditors. And while a court of equity, looking alone to the rights of all the creditors, might, in a case requiring it, have controlled the proceeds of the sale under the levy, it would not, on general principles, have had power to interfere to prevent a sale, dr to deprive the plaintiffs of any legal advantages that their levy gave them. It follows that the law having, seized and appropriated the property in question to its legitimate purpose—the payment of partnership debts—it was not within the power of a court of equity to take the proceeds of the property from the possession of the law, which held them for a specific purpose, arid appropriate them to another. Although, as we have above found, the partners were not, and could not be entitled to the exemptions either in severalty, or jointly out of the partnership property, the court below found that the partners were entitled to five hundred dollars each out of the proceeds of the property, and decreed accordingly.
 

 In this there was error. We think the judgment creditors and not the partners were entitled to the money arising from the sale.
 

 Judgment reversed, and cause remanded for further proceedings.
 

 Welch, C. J., White, Rex, and McIlvaine, JJ., concurred.